[Cite as *Dehen v. Ohio State Univ.*, 2025-Ohio-3240.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Reese C. Dehen, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 24AP-671<br>(Ct. of Cl. No. 2023-00457JD) |
| [The] Ohio State University, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 9, 2025

**On brief:** *Reese C. Dehen*, pro se.

**On brief:** *Dave Yost*, Attorney General, *Peter DeMarco*, and *Daniel J. Benoit*, for appellee.

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1}  Plaintiff-appellant, Reese C. Dehen, appeals from a judgment of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, The Ohio State University ("OSU").  For the following reasons, we affirm.

**I.  Facts and Procedural History**

{¶ 2}  In 2023, appellant commenced an action against appellee in the Court of Claims seeking compensatory and punitive damages, as well as injunctive relief, for negligent misrepresentation, fraud, negligence, promissory estoppel, and for violation of the Ohio Consumer Sales Practices Act ("Ohio CSPA") relating to appellant not being awarded a National Buckeye Merit Scholarship ("NBMS") by appellee.

{¶ 3}  Appellant, a student at OSU, alleged that she learned about the NBMS during the process of being recruited for OSU's women's swim team for the 2021 incoming class of

students. The value of the NBMS was $13,500 per year. Appellant alleged that she met the criteria that OSU listed on its website for the scholarship and expected to have been at the top of the rankings as a result of being a high academic achiever.

{¶ 4} According to the complaint, the NBMS application prior to the 2021 incoming class required the submission of ACT/SAT scores for scholarship consideration. But due to limited testing opportunities as a result of the COVID-19 pandemic, appellee waived the test-score requirement for the 2021 incoming class.

{¶ 5} Appellant alleged that she chose not to submit her ACT/SAT scores with her NBMS application as a result of that requirement having been waived. Appellant alleged that she expected to receive equal consideration for the NBMS without her test score based on appellee's representations on its website that applications from students who did not submit test scores would be given "full consideration." (Emphasis deleted.) (Am. Compl. at ¶ 18.)

{¶ 6} After applying for the NBMS, but before receiving a result, appellant signed a letter of intent to attend OSU. After receiving her financial aid package, she learned she was not a recipient of an NBMS. She attempted to seek an appeal or reconsideration of her application but was told by appellee that the decision was final.

{¶ 7} Appellant's father submitted a public records request to appellee. Through that request, appellant learned that there were 11,170 eligible applicants for the NBMS, but 5,508 scholarships awarded to the incoming class of students. Of the awarded scholarships, 1,071 were awarded to applicants who did not submit ACT/SAT scores and 4,437 were awarded to applicants who did submit test scores. Appellant alleged that she "would have received the NBMS had OSU truthfully given full consideration of her GPA and class rank." (Am. Compl. at ¶ 53.)

{¶ 8} In its answer, appellee asserted as a defense that it may be immune from liability pursuant to the discretionary immunity doctrine.

{¶ 9} On July 2, 2024, appellee moved for summary judgment. It argued that the decision to award scholarships pursuant to its established criteria was a discretionary decision for which it was immune as a state entity. It also argued that the Court of Claims had no jurisdiction over appellant's Ohio CSPA claim because the state had consented to suits for violations of the Act in courts of common pleas, citing R.C. 1345.01, 1345.02, and

1345.04. Appellee further argued that even if the court had jurisdiction to review appellant's claims, she did not state a claim for relief.

{¶ 10} In response, appellant conceded that establishing criteria for the scholarship was a discretionary act but asserted that OSU did not properly perform the act of applying the criteria. Appellant argued that OSU's failure to apply its scholarship criteria resulted in her being improperly denied an award.

{¶ 11} On October 2, 2024, the Court of Claims entered judgment granting appellee's motion for summary judgment, stating in its decision that appellant's Ohio CSPA claim and any claims barred by discretionary immunity were dismissed without prejudice for lack of jurisdiction.

## II. Assignments of Error

{¶ 12} Appellant appeals and assigns the following three assignments of error for our review:

> [I.] The judicial officers, including both the assigned judge and referee, failed to recuse themselves in spite of ties to the Defendant-Appellee.
>
> [II.] The judicial officers, including both the assigned judge and referee, failed to order Defendant-Appellee to produce certain discovery.
>
> [III.] The Court of Claims erred in granting the Defendant-Appellee's Motion for Summary Judgment.

## III. Discussion

{¶ 13} In her brief, appellant withdrew her first assignment of error. Therefore, we address only the second and third assignments of error.

{¶ 14} In her second assignment of error, appellant argues the Court of Claims abused its discretion when it denied her motions to compel certain discovery.

{¶ 15} Appellant's motions to compel were denied by a magistrate's order.[1] Pursuant to Civ.R. 53(D)(2)(a)(i) a magistrate to whom a matter is referred by a judge "may enter orders without judicial approval if necessary to regulate the proceedings and if not dispositive of a claim or defense of a party." Civ.R. 53(D)(2)(b) states that "[a]ny party may

---

[1] The Court of Claims appointed a magistrate to the case "without limitation of authority specified in Civ.R. 53(C)." (July 27, 2023 Entry.)

file a motion with the court to set aside a magistrate's order," and such motion shall be filed within ten days after the magistrate's order is filed.

{¶ 16} Here, it does not appear from the record that appellant moved to set aside the relevant orders. "Ohio courts have held that if a party does not move to set aside a magistrate's order, that party has waived a challenge to that order on appeal." *Smith v. Smith*, 2019-Ohio-114, ¶ 10 (10th Dist.), citing *Ganaway v. Ganaway*, 2017-Ohio-1009, ¶ 18 (12th Dist.); *Laser v. Laser*, 2013-Ohio-3853, ¶ 9 (6th Dist.); *O'Brien v. O'Brien*, 2012-Ohio-5185, ¶ 8 (8th Dist.); *Nagel v. Nagel*, 2010-Ohio-3942, ¶ 26 (9th Dist.), *appeal not accepted*, 2010-Ohio-6371. Because appellant did not move to set aside either of the magistrate's orders denying her motions to compel, we find that she has waived the right to argue the merits of those discovery disputes on appeal. Accordingly, we overrule appellant's second assignment of error.

{¶ 17} In appellant's third assignment of error, she argues that the Court of Claims erred in granting summary judgment to appellee based on discretionary immunity and that it improperly resolved a disputed material fact regarding whether appellant's scholarship application was given "full consideration."

{¶ 18} "[D]iscretionary immunity is a jurisdictional bar, not an affirmative defense, and the Court of Claims does not have subject-matter jurisdiction over suits brought against the state when discretionary immunity applies." *Smith v. Ohio State Univ.*, 2024-Ohio-764, ¶ 21. The source of discretionary immunity is R.C. Chapter 2743 in which the state has waived its sovereign immunity for certain suits brought against it in the Court of Claims. *Id.* More specifically, the Supreme Court of Ohio held in *Reynolds v. State, Div. of Parole & Community Servs.*, 14 Ohio St.3d 68, 70 (1984), as follows:

> The language in R.C. 2743.02 that 'the state' shall 'have its liability determined . . . in accordance with the same rules of law applicable to suits between private parties . . .' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion.

{¶ 19} The scope of the state's preserved immunity is narrow, however. In *Reynolds*, the Supreme Court distinguished the exercise of making a basic policy decision pursuant to an executive or planning function from the performance of an activity or

function pursuant to that policy. "[O]nce the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the *performance* of such activities." (Emphasis added.) *Id.* Consistent with this, the Supreme Court recently emphasized that "[t]he state has not waived its sovereign immunity when it *acts pursuant* to its highly discretionary legislative, judicial, executive, or planning functions." (Emphasis added.) *Smith*, 2024-Ohio-764, at ¶ 21. Stated another way, "[d]iscretionary immunity does not 'extend beyond [the state's] discretionary function to acts of *implementation*.' " (Emphasis added.) *Smith v. Ohio State Univ.*, 2024-Ohio-5887, ¶ 24 (10th Dist.), quoting *Risner v. Ohio Dept. of Transp.*, 2015-Ohio-4443, ¶ 24.

{¶ 20} In granting summary judgment to appellee, the Court of Claims concluded that "OSU's decision to adopt a policy amid the pandemic by which it waived the requirement for scholarship applications to include a standardized test score and developed criteria for considering such applications was an executive or planning function for which the state is immune." (Oct. 2, 2024 Decision at 9.) It found, therefore, that the Court of Claims was without jurisdiction to the extent that appellant's claim's challenged OSU's scholarship policy and the decision made under that policy to not award appellant the scholarship.

{¶ 21} Appellant has conceded that the creation of scholarship criteria is a discretionary act of policy making. She instead argues that the operative issue here is whether OSU properly applied or implemented its criteria, and she asserts that there remains a genuine issue of material fact on this question.

{¶ 22} Appellee argues that establishing scholarship criteria to allocate limited scholarship funds is a discretionary decision for which appellee is immune. Appellee also argues that it gave "full consideration" to students, like appellant, who did not submit test scores because it applied its new criteria to those students.

{¶ 23} A grant of summary judgment is reviewed on appeal under a de novo standard. *Capella III, LLC v. Wilcox*, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 2001-Ohio-1607. "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 2010-Ohio-6529, ¶ 9 (10th Dist.). Summary judgment is appropriate where "the moving party demonstrates

that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Capella III* at ¶ 16, citing *Gilbert v. Summit Cty.*, 2004-Ohio-7108, ¶ 6. In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Pilz v. Ohio Dept. of Rehab. & Corr.*, 2004-Ohio-4040, ¶ 8 (10th Dist.).

{¶ 24} In the case before us, we agree with the Court of Claims that appellee exercised its executive or planning functions to make a basic policy decision in the form of scholarship criteria, including a proxy score system for applicants who did not submit test scores. Appellee performed the policy, acted pursuant to that policy, or implemented that policy when it applied the criteria and the proxy score system to appellant's scholarship application. To determine whether appellee is entitled to discretionary immunity on the full extent of appellant's claims purporting to challenge OSU's implementation of its policy when it applied the scholarship criteria, including the proxy score formula, to her application, we first look to appellant's amended complaint to determine what appellant is challenging. *See Smith*, 2024-Ohio-5887, at ¶ 25 (10th Dist.). Specifically, we look to see if appellant is asserting that appellee is liable for something other than the creation of scholarship criteria which would involve the making of a policy, or a policy decision, characterized by a high degree of discretion and, therefore, be subject to discretionary immunity.

{¶ 25} In her amended complaint, appellant alleged that she interpreted the statement on OSU's website that NBMS applications without test scores would receive "full consideration" to mean that she would receive an "equal or near equal opportunity" of being awarded a scholarship based on her GPA and class rank as compared to those applicants who did submit test scores. (Am. Compl. at ¶ 19.) Appellant alleged that appellee "either negligently or intentionally" created a "defect" in the application process that penalized applicants who did not submit test scores or that appellee considered criteria that it did not publish on its website. (Am. Compl. at ¶ 29, 34). Appellant contended this allegation was supported by evidence of a disparity between the number of scholarships awarded to applicants with and without test scores. She argued she would have received a scholarship

if appellee had "truthfully given full consideration of her GPA and class rank." (Am. Compl. at ¶ 53.)

{¶ 26} In her brief on appeal, appellant argues it was error for the Court of Claims to credit an affidavit from OSU's Executive Director of Undergraduate Admissions that stated appellant's scholarship application was given full consideration. Appellant also argues that appellee never provided evidence that the scholarship criteria changed from what was published on its website, apparently referring to the proxy score system that appellee used to assess its rankings for applicants who did not submit test scores. As a result, appellant argues, appellee "tortiously implemented" its criteria through an unpublished proxy score system. (Appellant's Brief at 15.)

{¶ 27} We are not persuaded by appellant's attempts to frame her claims as challenging the application of the scholarship criteria rather than the criteria themselves. Based on the allegations and arguments submitted, appellee's liability turns on the scholarship criteria, appellee's decision to waive the requirement to submit test scores for the 2021 incoming class of students, and/or appellee's decision to develop and apply a proxy score formula to rank the scholarship applicants who did not submit test scores. Each of these is a policy decision related to the scholarship criteria for the NBMS which is characterized by a high degree of official judgment or discretion. Finally, appellant's claims that the proxy score was a defect in the implementation of the existing scholarship criteria or that the proxy score system was an improper application of the criteria are a disagreement with that policy itself. Therefore, to the extent appellant's amended complaint challenges appellee's scholarship criteria and proxy score system for the NBMS, we agree with the Court of Claims that it is without jurisdiction to consider the same.

{¶ 28} We caution, however, against reading too broadly the Court of Claims' conclusion that it was without jurisdiction to consider the "decision OSU made under that policy to not award her the NBMS," notwithstanding that the court still considered appellant's claims despite that conclusion. (Oct. 2, 2024 Decision at 9.) As noted above, the Supreme Court of Ohio and this court have held that the state's sovereign immunity does not apply when the state "acts pursuant to" a policy nor does it extend to the state's "acts of implementation" of a policy.[2] The state has a duty to properly implement its

---

[2] *See supra* ¶ 19.

discretionary policy decisions. *See Risner*, 2015-Ohio-4443, at ¶ 24. Accordingly, the Court of Claims might have jurisdiction to consider the decision OSU made under its scholarship criteria to not award appellant the NBMS if her claims amounted to a challenge to *how* the scholarship criteria were applied to her—for example, if the proxy score was miscalculated under the established formula or if a proxy score was used even if she actually submitted test scores—versus a challenge to the criteria themselves. But here, each of appellant's claims of promissory estoppel, fraud, negligent misrepresentation, and negligence essentially allege that OSU did not give appellant's NBMS application "full consideration" pursuant to the scholarship criteria. We agree with the Court of Claims that appellant has not established a genuine issue of material fact related to how appellee applied the scholarship criteria to her academic credentials. In this case, each of appellant's claims amount to a challenge to the scholarship criteria and the proxy score system itself, not to appellee's execution of the criteria and proxy score formula.

{¶ 29} For example, that appellant was not ultimately awarded a scholarship based on her GPA and class rank alone does not establish a genuine issue of material fact about whether there was some wrongful application of the scholarship criteria. Furthermore, as to appellant's suggestion that the disparity between scholarship awards to applicants who submitted test scores and those who did not demonstrates that appellee did not properly apply its criteria, we are not persuaded that this amounts to a genuine issue of material fact about the application of the developed scholarship criteria, including the proxy score system, to a pool of scholarship applicants vying for limited funds. Nothing in the scholarship criteria indicate that someone who met certain criteria to apply would automatically be granted an NBMS. In fact, the language from OSU's website submitted with appellant's summary judgment briefing states, "Merit scholarships are competitive and not guaranteed," and "Award amounts and criteria are subject to change without notice." (Bates OSU 0009, attached to Walton Aff.) Appellant's argument that she did not receive the promised "full consideration" of her scholarship application is, at bottom, a disagreement about appellee's discretionary decision to use a proxy score system to assist its rankings for students who did not submit test scores with their scholarship application.

{¶ 30} Additionally, appellant notes in her brief that she "did not actually attend Anoka High School" but that fact was used to calculate her proxy score and the Court of Claims failed to address this "disparity." (Appellant's Brief at 15, fn 1.) Despite appellant's

attempts to re-characterize her coursework in her brief, appellant's amended complaint states that appellant attended Anoka High School during which she accumulated a certain GPA and class rank and a year of college coursework at a local community college through a Post Secondary Educational Opportunity (PSEO) program.

{¶ 31} In sum, appellant has not demonstrated a genuine issue of material fact relating to the application of appellee's scholarship criteria to demonstrate that her promissory estoppel, fraud, negligent misrepresentation, and negligence claims fall outside the limited scope of discretionary immunity. Instead, we find that appellant's claims assert a challenge to a policy for which appellee is entitled to discretionary immunity. Therefore, to that extent, we agree with the Court of Claims that it lacked jurisdiction to consider appellant's claims of negligent misrepresentation, fraud, negligence, and promissory estoppel. Accordingly, we overrule appellant's third assignment of error.

## IV. Conclusion

{¶ 32} For the foregoing reasons, we conclude that appellant waived the right to challenge the Court of Claims' denial of appellant's motions to compel certain discovery. Additionally, we conclude that there remains no genuine issue of material fact regarding whether appellee is immune from liability on the claims asserted in appellant's amended complaint regarding OSU's decision not to award her an NBMS. Because appellee is entitled to discretionary immunity, the Court of Claims lacks jurisdiction over this action and the Court of Claims properly awarded summary judgment in favor of appellee on that basis. As a result of this conclusion, we need not address the merits of appellant's promissory estoppel, fraud, negligent misrepresentation, and negligence claims, or those portions of the Court of Claims' decision regarding the same. Having overruled the second and third assignments of error, and appellant having withdrawn the first assignment of error, we therefore affirm the Court of Claims' decision.

*Judgment affirmed.*

MENTEL and BOGGS, JJ., concur.

———————